# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

|  |  |  |
|---|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:05CV834 |
| | ) | |
| PIRTHI SINGH, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is a declaratory judgment action that is before the court by consent of the

parties (28 U.S.C. § 636(c)(1)) on cross motions for summary judgment.  28 U.S.C. § 2201 *et*

*seq*.  The Plaintiff, State Farm Fire & Casualty Company (State Farm), moves the court to decide

as a matter of law that it has no obligation, including the duty to defend, against the claims that

are being pursued in a state court action by Catherine E. Fitzpatrick (Fitzpatrick) against Pirthi

Singh, his business partner, Kaur P. Singh, their business, P&G Associates, Inc. (P&G), and

Manchester Marketing, Inc. (Manchester), a related business entity, for injuries Fitzpatrick

allegedly incurred as the result of an assault by Singh.[1]  Any obligation of State Farm for

providing a defense and to indemnify its insured against any recovery arises under either of two

liability insurance policies that each name P&G as the insured.  State Farm has joined Fitzpatrick

---

[1]Fitzpatrick is the only defendant that has filed any responsive pleadings.  Manchester Marketing was dismissed as a party defendant in the state action, but State Farm has joined it as an additional party defendant in this case, presumably in order to resolve all potential coverage issues.

and the state action defendants as defendants in this case in order to resolve all potential coverage

issues.[2] Fitzpatrick opposes State Farm's motion and has filed a cross motion for summary

judgment for a determination that either there is coverage, or that the question of coverage is a

question of material fact that cannot be resolved on summary judgment.  State Farm seeks a

declaration that it has no duties pursuant to either the governing Business Policy or the Umbrella

Policy under the circumstances giving rise to the state court action.

> The relevant portions of the Business Policy are:

> > Coverage L - Business Liability
> > We will pay those sums that the insured becomes legally obligated
> > to pay as damages because of bodily injury . . .   This insurance
> > applies only:
> > 1.      to bodily injury or property damage caused by an
> >         occurrence which takes place in the coverage territory
> >         during the policy period;
> > 2.      To personal injury caused by an occurrence committed in
> >         the coverage territory during the policy period.  The
> >         occurrence must arise out of the conduct of your business,
> >         excluding advertising;
> >                          . . .
> > Right and Duty To Defend
> > We will have the right and duty to defend any claim or suit seeking
> > damages payable under this policy even though the allegations of
> > the suit may be groundless, false or fraudulent.  The amount we
> > will pay for damages is limited as described in Limits of Insurance.
> > Damages because of bodily injury include damages claimed by any
> > person or organization for care, loss of services or death resulting
> > at any time from the bodily injury.  We may investigate and settle
> > any claim or suit at our discretion.  Our right and duty to defend
> > and when we have used up the applicable limit of insurance in the
> > payment of judgments or settlements or medical expenses.
> >                          . . .
> > Business Liability Exclusions
> > Under coverage L, this insurance does not apply:

---

[2]The two policies at issue are a Business Policy, policy number 96-KL-2926-4 (ex. 2 to Pl.'s Mem. Supp. Mot. Summ. J.)(Pl.'s Mem.) and Commercial Liability Umbrella Policy policy number 96-KL-2928-8 (ex. 3 to Pl.'s Mem.).

      1.      to bodily injury or property damage . . .

      b.      to any person or property which is the result of willful and malicious acts of the insured.

. . .

      5.      To bodily injury or personal injury to any employee of the insured arising out of and in the course of their employment . . . by the insured . . .

. . .

      16.      To personal injury . . .

. . .

      c.      arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

. . .

Who is an Insured

. . .

      2.      Each of the following is also an insured:

      a.      your employees . . . but only for acts within the scope of their employment by you.  However, no employee is an insured for

      (1)      bodily injury or personal injury to you or to a fellow employee while in the course of his or her employment . . .

. . .

Definitions

      3.      bodily injury means bodily injury, sickness or disease sustained by a person . . .

      10.      occurrence means:

      b.      the commission of an offense, or a series of similar related offenses, which results in personal injury . . .

      11.      personal injury means injury, other than bodily injury, arising out of one or more of the following offenses:

      a.      false arrest, detention or imprisonment;

. . .

(Pl.'s Mem., ex. 2 at 20-22, 24, 27, 32).

The relevant portions of the Umbrella Policy are:

This insurance applies only:

      1.      to bodily injury . . . caused by an occurrence which takes place in the

> coverage territory during the policy period;

2.  to personal injury caused by an occurrence committed in the coverage territory during the policy period.  The occurrence must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

. . .

Right and Duty to Defend

1.  When underlying insurance or any other insurance does not apply to an occurrence:

If a claim or suit is covered by this policy but not covered by any underlying insurance or any other insurance available to the insured, we will have the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent.  We may investigate and settle any claim or suit at our discretion.  Our right and duty to defend and when we have used up the applicable limit of insurance in the payments of judgment or settlements.  The cost of defense and investigation are in addition to the amount of the net loss payable.  If we are not permitted by law or otherwise to carry out the duties set forth above, we will pay the insured for any expense incurred with our written consent.

. . .

Business Liability Exclusions

Under Coverage L - Business Liability, this insurance does not apply:

1.  to bodily injury or property damage:

. . .

b.  to any person or property which is the result of willful and malicious acts of the insured.

. . .

5.  To bodily injury . . . to any employee of the insured arising out of and in the course of their employment by the insured . . .

. . .

15.  to personal injury unless the underlying insurance provides coverage for the loss;

. . .

18.  to personal injury . . .

c.  arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured . . .

Designation of Insured

Who is an Insured

2.  Each of the following is also an insured:

a.  your employees . . . while acting within the scope of their employment by you . . .

. . .

Definitions

3.      bodily injury means bodily injury, sickness or disease sustained by a person . . .

10.    occurrence means:

        b.      the commission of an offense, or a series of similar related offenses, which results in personal injury . . .

11.    personal injury means injury, other than bodily injury, arising out of one or more of the following offenses:
        a.      false arrest, detention or imprisonment;

(Pl.'s Mem., ex. 3 at 1-2, 4, 6-7, 11-12).

The related state action that is pending in the Circuit Court of the City of Richmond, Virginia, asserts six claims on behalf of Fitzpatrick against the various defendants: Count I for assault and battery of Fitzpatrick by Pirthi Singh and P&G Associates; Count II for intentional infliction of emotional distress to Fitzpatrick by Pirthi Singh and P&G Associates; Count III for False Imprisonment of Fitzpatrick by Pirthi Singh and P&G Associates; Count IV for negligent hiring and/or retention of Pirthi Singh by Kaur P. Singh, P&G Associates, and Manchester Marketing; Count V for negligent failure by P&G Associates and Manchester Marketing to protect employees, including Fitzpatrick, from foreseeable danger of physical and sexual assault; and Count VI for punitive damages against all defendants.[3]

In the state action, Fitzpatrick alleges that on March 25, 2004, she was assaulted by Pirthi Singh at a Dairy Queen in Chesterfield, Virginia, where she was employed as a server and cashier. At that time, Pirthi Singh was a co-owner, President, and Director of P&G Associates while Kaur P. Singh was also a co-owner, director, and officer of P&G, which owns and operates

---

[3]The underlying lawsuit includes no allegation of sexual harassment as State Farm asserts. (Pl.s' Mem. at 1).

the business.  (Pl.'s Mem., ex. 1 ¶¶ 1-9).[4]  Specifically,  it is alleged that Pirthi Singh "patted Ms.

Fitzpatrick on the back and hugged her.  When Ms. Fitzpatrick pulled away from him, he pulled

her back into him, hugged her tighter and grabbed her left breast."  Id. ¶ 10.  Fitzpatrick reported

the incident to the police who conducted an investigation that discovered that a surveillance

video that had recorded the alleged assault.  Id. ¶ 11.  Pirthi Singh was subsequently convicted of

assault as a result of the incident.   Id. ¶ 12.

Fitzpatrick asserts that both she and Pirthi Singh were performing services in the course

and scope of their respective employment when he engaged in the unwanted touching and

restraint of Fitzpatrick resulting in her being physically injured, restrained, groped, put in fear

and terror, filled with anxiety, placed in  reasonable apprehension of bodily harm, degraded,

humiliated; all such activity causing mental and emotional anguish, pain, suffering, and related

injury.  Id. ¶¶ 14-15; 20-25; 28-30, 40, 49, 55.  In the state action, Fitzpatrick seeks damages for

bodily and personal injuries against P&G, as the employer, for the actions of its agent (Pirthi

Singh), pursuant to the doctrines of agency, respondeat superior, and vicarious liability (Counts I,

II, III).  Id. ¶¶ 26, 31, 39.  The state action also contains allegations that P&G, together with Kaur

P. Singh and Manchester Marketing, are liable for negligence in the hiring and retention of Pirthi

Singh and that the Defendants acted both negligently and willfully so as to justify an award of

punitive damages in addition to other requested monetary relief (Counts IV, V, VI).  Id. ¶¶ 41-

55.

---

[4]Manchester Marketing is a Dairy Queen franchisee that controlled the operation and/or participated in the operation and management of the particular business premises involved.  (P.'s Mem., ex. 1 (Fitzpatrick Mot. J.) ¶¶ 2,7-8).  It was removed as a party in the state action in any event.

**Question Presented**

Whether State Farm is obligated to defend and indemnify the Defendants in the state court action.

**Analysis**

In order to decide whether State Farm has any duties under the policies at issue, the court must determine whether the conduct alleged in the state action is "covered" under the policies. Travelers Indem. Co. v. Obenshain, 245 S.E.2d 247, 249 (1978). To find that an insurer has a duty to defend under Virginia law pursuant to a policy of insurance, the court must examine: "(1) the policy language to ascertain terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy." Town Crier, Inc. v. Hume, 721 F.Supp. 99, 103 (E.D.Va. 1989). State Farm concedes that the state action here adequately includes allegations of both "bodily injury" (with respect to all defendants in counts I, II, IV, V) and "personal injury" (with respect to Pirthi Singh and P&G in count III) as defined in the subject policies. (Pl.'s Mem. at 11-12). However, State Farm argues that it nonetheless has no duty to defend or to indemnify under the controlling policies because specific coverage exclusions apply.

Exclusions are to be narrowly interpreted and an insurer bears the burden of establishing that an exclusion in issue is applicable to the acts giving rise to the claim. Am. Reliance Ins. Co. v. Mitchell, 385 S.E.2d 583, 585 (1989). Here, both policies specifically exclude "bodily injury to any employee of the insured arising out of and in the course of their employment by the insured . . ." (Pl.'s Mem., ex. 2 at 22; ex. 3 at 2). Indeed, the allegations of the state action specifically assert that on May 25, 2004, Fitzpatrick "was working as a server and cashier at the

Dairy Queen" when the incident occurred in which she encountered an unknown man in the women's restroom and "reported the incident to Pirthi Singh," who was acting in the course of his employment as an owner and agent of the business, whereupon the assault took place. (Pl.'s Mem., ex. 1 ¶¶ 2, 9, 14-16, 18, 25). Additional allegations asserting that the incident "arose out of and in the course of [Fitzpatrick's] employment by the insured" are set forth in the state action, as noted by State Farm, and must be considered as true for purposes of resolving the pending motions. (Pl.'s Mem., ex. 1 ¶ 48 (the employment of Pirthi Singh "was likely to cause . . . injury and harm to female employees, including Catherine E. Fitzpatrick"); ¶ 51 (Ms. Fitzpatrick was invited onto the business premises as an employee); ¶ 52 ("the danger of injury to employees, including Ms. Fitzpatrick," was foreseeable); and ¶ 54 (regarding a duty to "provide warnings to protect employees, including Ms. Fitzpatrick"). Moreover, Fitzpatrick alleges that Pirthi Singh was "acting in the course and scope of his employment with and ownership of P&G . . . [a]t all relevant times." Id. ¶¶ 15, 18, 25. The state action further alleges that P&G, Kaur P. Singh, and Manchester Marketing, acted through their agent, Pirthi Singh, further confirming the employment context in which the incident occurred and the relationship of the various party defendants. Id. ¶¶ 26, 29, 31.

State Farm cites a number of decisions for the proposition that similar exclusionary language has been upheld to preclude coverage for workplace claims of sexual harassment and sexual assault. (Pl.'s Mem. at 13-15). Two of the decisions cited are from within this federal circuit, including the court of appeals holding in Gates, Hudson & Assoc. v. The Federal Ins. Co., 141 F.3d 500 (4th Cir. 1997), in which the court held that a similar exclusion denied coverage in a workplace employee sexual harassment and wrongful termination context. *See also* West Am.

Ins. Co. v. Bank of Isle of Wight, 673 F.Supp. 760 (E.D. Va. 1987)(exclusionary language regarding workplace "bodily injury" barred coverage for wrongful termination, negligence, and breach of fiduciary duty).  Fitzpatrick attempts to distinguish such case precedent by arguing that the holdings were dependent upon what the courts found to be encompassed within the meaning of "bodily injury," as defined by the controlling policy language, as opposed to whether the activity occurred within the course of the claimant's employment, and that the activity involved intentional conduct by an employer that does not have to be established to sustain a finding of negligence as regards P&G pursuant to a theory of respondeat superior.

The court concludes that where the allegations of the state action clearly demonstrate that Fitzpatrick was an employee of the insured when the incident occurred, the exclusion for precluding coverage for bodily injury occurring in the course of employment is triggered, which, in simple terms, is intended to preclude coverage for any "in-house" occurrence that would have to be the subject of separate coverage.[5]  Counts I, II, IV and V allege bodily injury as defined by policy language  ("bodily injury means bodily injury, sickness or disease sustained by a person"). (Pl.'s Mem., ex. 1 ¶¶ 25, 30, 40, 49, 55).  Therefore, there is no coverage for any of those claims alleging bodily injury where Fitzpatrick has alleged she was an employee at all relevant times.

"Personal injury" is defined in relevant part in both policies as "injury, other than bodily injury, arising out of one or more of the following offenses: a.  false arrest, detention or imprisonment . . . ."  (Pl.'s Mem., ex. 2 at 32; ex. 3 at 12).  The only remaining claim of false imprisonment by Pirthi Singh and P&G (Count III) to the effect that Pirthi Singh *restrained*,

_____

[5]The fact that Fitzpatrick allegedly suffered injury inflicted by a co-employee is irrelevant to the applicability of the exclusion based on whether the incident occurred while she was engaged in her employment, although the circumstance implicates another exclusion concerning actions attributable to a "co-insured" as discussed later herein.

9

patted, hugged, fondled, sexually abused and molested Fitzpatrick, involves an allegation of

"personal injury" in the sense of detention within the policy language.  However, an additional

exclusion to the "in course of employment" exception precludes coverage for any injury resulting

from the willful violation of a penal statute.  (Pl.'s Mem., ex. 2 at 24, ¶16c; ex. 3 at 4, ¶18c).  It is

not disputed that Pirthi Singh was convicted of assault as a result of the incident[6] and the acts

complained as asserted in Count III of the state action are the same that were the basis of Singh's

conviction. Therefore, the exclusions of both policies for injury resulting from such willful

conduct apply to the claim for false imprisonment as well.  Palmetto Ford, Inc. v. First Southern

Ins. Co., 1993 WL 369248, at *7 (4th Cir. 1993).[7]

A corporation acts through its agents.  Commodity Futures Trading Comm'n v.

Weintraub, 471 U.S. 343, 348 (1985).  Accordingly, a corporation is liable for the acts of its

employees, directors, officers, and other agents while they act within the scope of employment.

Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 543 (1999).  In this case, Pirthi Singh was an

employee and officer of P&G at the time it is alleged he committed the intentional acts described

in the state court action.  Under controlling Virginia law, even intentional torts may be within the

scope of employment  where the focus is not on an offending employee's motive, but the context

in which the action occurred.  Commercial Bus. Sys. Inc., v. Bellsouth Servs. Inc., 453 S.E.2d.

---

[6]The record does not include a copy of the judgment in the criminal case.  However, because it has not been challenged, the court accepts as true that the Defendant Pirthi Singh was convicted of assault as a result of the subject incident as alleged in the state court action.

[7]Although not necessary for resolution of the pending motions since relief is premised on alternative grounds, in the interest of completeness and possible review, it is further noted that separate policy language that precludes coverage for acts by a co-insured employee is contained in the umbrella policy whereby where all employees are considered to be "insureds," but coverage would only apply if provided for in the "underlying insurance" (the Business Policy) which specifically excludes coverage for employment-related injury as previously discussed. (Pl.'s Mem. at 9, 19; ex. 3 at 4-5).

261, 266 (Va. 1995); Plummer v. Ctr. for Psychiatrists, Ltd., 476 S.E.2d 172, 174-175 (Va.

1996).   The incident here arose in the course of a normal work schedule, on the business

premises where both Pirthi Singh and Fitzpatrick were working.  The initial encounter occurred

when Fitzpatrick reported a concern to Singh (that there was a man in the women's bathroom)

which was an activity (the reporting and receipt of such information) that was within the scope of

each of their positions.  Though P&G is liable for the acts of its agents, including Pirthi Singh,

the exclusion for willful violation of a penal statute precludes coverage for both the principal,

P&G, and its agents.

Fitzpatrick argues that whether she was an employee of the defendants (Kaur Singh, P&G

and Manchester) at the time she was assaulted is "irrelevant to the issue at hand" because the

allegations of the complaint are based on the theory of respondeat superior.[8]  (Fitzpatrick's Mem.

Supp. Cross Mot. Summ. J. at 3).  Fitzpatrick argues that the discretion of a trial judge to

determine the scope of employment as a matter of law is limited and whether an employee's acts

were within the scope of his employment by insureds when committing a willful act should be a

question for a jury.  Id.; Commercial Bus. Sys., Inc., 453 S.E.2d at 265 (Va. 1995).  This analysis

is incorrect.

In this case, the agency relationship between is Pirthi Singh and P&G is undisputed and,

therefore, it is well-settled under Virginia law that the burden is on the principal to prove that the

agent was not acting within the scope of his employment. Commercial Bus. Sys., Inc., 453

S.E.2d at 265.  Here, the court must take the facts pled in the motion for judgment as established

---

[8]Fitzpatrick's negligence claims against Kaur P. Singh, P&G, and Manchester (counts IV and V) are claims for bodily injury.  Negligence is not one of the specified offenses that constitutes personal injury under the policies. (Pl.'s Mem., ex. 1 at 32).

for the purpose of analysis to determine whether coverage exists.  Town Crier, 721 F.Supp. at

103.  The motion for judgment not only states that Pirthi Singh was an officer, director and

owner of P&G and the Dairy Queen, but also that "at all relevant times, Pirthi Singh was acting

in the course and scope of his employment with and ownership of P&G Associates, Inc., at the

Dairy Queen," that he was "performing services in the course and scope of his employment"

when he "engaged in wrongful conduct" under the  "actual and apparent authority given to him

by P&G Associates," and that his actions arose "out of his performance of his duties as an owner

and employee of P&G . . . in the course of his employment . . . to supervise and control the store

and premises." (Pl.'s Mem., ex. 1 ¶¶ 13-15, 18).  Fitzpatrick is the only party that elected to

respond or oppose State Farm's request for declaratory judgment.  Therefore, there has been no

action by the principal to challenge Pirthi Singh's status as an employee.

The motion for judgment in the state court action sets forth facts that demonstrate that

Pirthi Singh was acting within the scope of his employment, presumably as Fitzpatrick's

supervisor, and the person to whom employees should report things such as strange

circumstances in the women's bathroom.  Even given the egregious, intentional nature of the

assault described in the complaint, under Virginia law, Singh was engaged as an employee in his

role as supervisor when he assaulted Fitzpatrick.  Doyle-Penne v. Muhammad,  2000 WL

1086906, at *2 (4th Cir. 2000)(unpublished)(describing in detail why an intentional tort was

within the scope of employment where an assistant assaulted her supervisor by pinning her

against a wall and repeatedly punching her in the chest, the court found that the "dispute arose

out of Muhammad's performance of her duties . . . during a normal business day, inside the

offices . . . where both parties were employed. The altercation was caused by Muhammad

transferring a telephone call to Doyle-Penne. Transferring calls was part of Muhammad's job. Indeed, few things are as synonymous with office routine as the use of the telephone system. Finally, the dispute occurred when Doyle-Penne, a more senior employee, attempted to correct a deficiency in Muhammad's performance of her job.").

Fitzpatrick's argument that the trial court's fact-finder must decide whether Singh was acting within the course and scope of his employment, and thus whether P&G is liable as the principal, is not the standard applicable in the questions presented in this case because the court must treat the facts in the complaint as true. Town Crier, 721 F.Supp. at 103. Moreover, under both Virginia's broad interpretation of respondeat superior, as well as this court's required application of Virginia's law, there is no factual dispute but that Singh was acting within the course and scope of his employment. Doyle-Penne, 2000 WL 1086906, at *2. Finally, and conclusively, the employee exclusion to the bodily injury claims does not relate to Pirthi Singh's status, but rather to Fitzpatrick's status as an employee.

However, Pirthi Singh's status as an employee is also established for purposes of determining that the co-insured exclusion also applies under the terms of the Umbrella Policy – there is no coverage for "a claim for damages arising out of bodily injury [or] personal injury . . . which any insured . . . covered by this policy initiates, alleges, or causes to be brought against any other insured . . . covered by this policy.". (Pl.'s Mem., ex. 3 at 5).  If, as Fitzpatrick urges, Pirthi Singh were not an insured because he was acting outside the scope of his employment, then P&G, Kaur P. Singh, and Manchester Marketing would all be relieved of any liability under the theory of respondeat superior and thus no coverage would be implicated. Kidd v. DeWitt, 105 S.E. 124, 126 (Va. 1923)(citing old case precedent to demonstrate that an employee must

13

totally depart from the scope of his employment, not merely deviate from it, to preclude employer liability for an employee's wrongful conduct).  Not only does the language used in the policies clearly exclude claims based on bodily injury to an employee, additional language excludes claims for personal injury arising out of the willful violation of a penal statute, and claims by one insured (an employee, Fitzpatrick) against another insured (an employee, Pirthi Singh).  (Pl.'s Mem., ex. 1 ¶¶ 9, 13-14).

### Conclusion

State Farm has demonstrated that it is under no duty to defend or indemnify P&G, Pirthi Singh, Kaur P. Singh, or Manchester Marketing under any theory advanced by Fitzpatrick and, therefore, the Plaintiff is entitled to judgment in its favor.

An appropriate Order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Dated:  5/25/06